1  Dr. Stewart Lucas Murrey
   1217 Wilshire Blvd. # 3655
2  Santa Monica, CA 90403
   Tel.: (310) 994-1711
3  Email: lucas.murrey@aya.yale.edu

4  Plaintiff & Plaintiff In Pro Per

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

FEB 20 2019

Sherri R. Carter, Executive Officer/Clerk
By Lionila Power, Deputy

## SUPERIOR COURT, CALIFORNIA, LOS ANGELES COUNTY
## WEST DISTRICT, SANTA MONICA COURTHOUSE

| | |
|---|---|
| DR. STEWART LUCAS MURREY, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES, a municipality; LOS ANGELES POLICE DEPARTMENT, a governmental entity; Stevens, an individual; Andrews, an individual; Kerry Young, an individual; C. Halchishak, an individual; B. Royer, an individual; Salazar, an individual; and DOES 1 through 50, inclusive;<br><br>Defendants. | Case No. 18SMCV00141<br><br>Dept. K<br><br>UNLIMITED CIVIL, DEMAND FOR MORE THAN $25,000<br><br>PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES FOR<br><br>1) FALSE IMPRISONMENT & CONSPIRACY<br>2) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br>3) DEFAMATION<br>4) DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER COLOR OF STATE LAW 42 U.S.C. § 1983 & CC § 52.1 ET SEQ<br><br>Complaint Filed: 31 October 2018<br>Honorable Judge Mark A. Young |

## PARTIES

- 1 -
PLAINTIFFS' FIRST AMENDED COMPLAINT

EXHIBIT 3 - PAGE 16

1. The complaint filed by Plaintiff Dr. Stewart Lucas Murrey (a.k.a. Lucas Murrey, hereinafter referred to as Plaintiff) on 31 October 2018 is hereby amended and restated as follows:

2. Plaintiff is and at all times mentioned herein was, an individual, over the age of majority, residing in the City of Los Angeles, County of Los Angeles, State of California. Plaintiff has always enjoyed a very good reputation in both his personal and professional life and is respected in local and international communities.

2. At all times herein mentioned defendant CITY OF LOS ANGELES was and is a legal and political entity established under the laws of the State of California and the Charter of the County of Los Angeles, with all the powers specified and necessarily implied by the Constitution and laws of the State of California and exercised by a duly elected Board of Supervisors or its agents and officers.

3. At all times mentioned herein the LOS ANGELES POLICE DEPARTMENT was and is a public entity under California law.

4. DEFENDANT Stevens (hereinafter referred to as DEFENDANT) upon information and belief, is now, and at all times mentioned herein was, an individual, over the age of majority, residing in the City of Los Angeles, County of Los Angeles, State of California.

5. DEFENDANT Andrews (hereinafter referred to as DEFENDANT) upon information and belief, is now, and at all times mentioned herein was, an individual, over the age of majority, residing in the City of Los Angeles, County of Los Angeles, State of California.

6. DEFENDANT Kerry Young (hereinafter referred to as DEFENDANT) upon information and belief, is now, and at all times mentioned herein was, an individual, over the age of majority, residing in the City of Los Angeles, County of Los Angeles, State of California.

7. DEFENDANT C. Halchishak (hereinafter referred to as DEFENDANT) upon information and belief, is now, and at all times mentioned herein was, an individual, over the age of majority, residing in the City of Los Angeles, County of Los Angeles, State of California.

8. DEFENDANT B. Royer (hereinafter referred to as DEFENDANT) upon information and belief, is now, and at all times mentioned herein was, an individual, over the age of majority residing in the City of Los Angeles, County of Los Angeles, State of California.

9. DEFENDANT Salazar (hereinafter referred to as DEFENDANT) upon information and belief, is now, and at all times mentioned herein was, an individual, over the age of majority, residing in the City of Los Angeles, County of Los Angeles, State of California.

10. Plaintiff is at this time aware of multiple, but not all of the true names or capacities, whether they are individuals, of DEFENDANT DOES 1 through 50, and therefore sues them by such fictitious names and will seek leave of this Court to insert true names and capacities once they have been ascertained.

11. At all times mentioned herein, Defendants, inclusive of DOES 1 through 50, were emboldened by one other, and did so act, as agents conspiring with each other. Upon evidence, information and belief, Defendants and any such potential further accomplices are responsible in for the events described herein and are liable to Plaintiff for the damages they caused.

## JURISDICTION

12. This court is the proper court for trial in this action in that the actions and omissions of Defendants as alleged herein were made within this Court's jurisdictional area.

### I.

## GENERAL ALLEGATIONS

13. Plaintiff is a well-known and respected published scholar with a Ph.D from Yale University and who has published at least two celebrated and often cited scholarly books. Plaintiff further obtained his real estate license in 2016 and has had potential earnings via commissions as a

real estate agent for family and friends for well over hundreds of thousands of dollars since the beginning of 2017.

14. Plaintiff's significant other/domestic partner, in her battle with cancer, required increasing care and attention, and by the time she passed on 10 March 2018, Plaintiff was traumatized by the loss of her. Because none of her family, nor her friends came to help him or her in any significant way, despite their pleadings for help, Plaintiff was not only traumatized by the loss of someone he loved deeply, but also physically and mentally exhausted.

15. On 28 March 2018 Plaintiff sought assistance from police to manage his significant other/domestic partner's estate. In particular he needed to have her car which he had temporarily loaned to her sister from Oklahoma (who had flown in after she passed) returned to him. On said day, 28 March 2018, Plaintiff freely walked into the Pacific Division of the Los Angeles Police Department at 12312 Culver Blvd., Los Angeles, CA 90066 to seek help with the return of said loaned car.

16. Instead of assisting him, the personal freedom of Plaintiff was wrongfully detained.

17. During his arrest, Plaintiff was never read his rights, nor was he ever questioned.

18. Plaintiff was brutally handcuffed such that his wrists were hurt for days.

19. Plaintiff's personal property, including vital notarized legal documents such as the notarized will of his significant other/domestic partner, the notarized power of attorney, the notarized advanced directive, his only copy (of the original) of his domestic partnership statement, her passport and ID, as well as his own personal items, etc., were taken from him.

20. Plaintiff was locked within a windowless holding cell for at least four (4) hours and his pleadings to use the bathroom were intentionally ignored, to say nothing of the fact that Plaintiff was never given an explanation of why this was happening to him.

21. Plaintiff was then harassed by officers while being booked and held in jail for another four (4) hours.

22. Plaintiff was told that unless he was able to post bail, he would spend the entire weekend in jail.

23. While being harassed by officers, Plaintiff used the telephone eventually made available to him to call and post bail.

24. Plaintiff posted bail and this cost him $1,600.00 which he had to immediately withdraw from his personal banking account at various ATMs while the bailbonds individual drove him to each and waited for him.

25. When Plaintiff posts bail none of the vital legal notarized documents such as the notarized will of his significant other/domestic partner, the notarized power of attorney, the notarized advanced directive, his only copy (of the original) of his domestic partnership statement, her passport and ID, which are also his personal property, are returned to him.

26. Knowing he was innocent Plaintiff contacts police several times to find out why he was arrested and to have the above-mentioned legal documents returned to him, but the police refuse to cooperate.

27. Plaintiff finds out that a needless autopsy is being performed on his domestic partner/significant other although there is no evidence for why an autopsy is necessary.

28. On 18 April 2018 the District Attorney rejects the police case against Plaintiff, which turned out to be forgery and homicide, bizarrely, as there was no evidence to suggest either crime had occurred.

29. On 29 May 2018 Plaintiff gets access to the autopsy report of his domestic partner/significant other which confirms his innocence and which the police knew about already on 30 March 2018 but kept from him.

PLAINTIFFS' FIRST AMENDED COMPLAINT

EXHIBIT 3 - PAGE 20

30. Although Plaintiff continued to contact the police, only by early August 2018 (almost a half-year later) did he finally receive a letter from the police saying that he could pick up his property and the vital legal notarized documents mentioned above.

31. And although Plaintiff subpoenaed the police on 26 April 2018 for the police report, only when he in pro per was able to put together an ex parte application to compel the subpoena did the police finally give him a copy of the police report and the bodycam and sound of the false report made against Plaintiff on 15 March 2018 at the West LA Police Station on 1663 Butler Ave., Los Angeles, CA 90025, just days after his significant other/domestic partner passed from cancer.

32. In the police bodycam video with sound not only is it clear that there is a "homicide unit" investigating Plaintiff without reason, but also a police officer referred to as "Cody" deceitfully misrepresents and defames Plaintiff by wrongfully claiming that Plaintiff 1) did not have power of attorney, which he did; 2) by falsely claiming that the estranged sister who, like his sergeant Stevens, is from Oklahoma, had power of attorney; 3) falsely claiming that Plaintiff forged documents; 4) that Plaintiff stole money upwards of $20,000.00 from his significant other/domestic partner, which he did not; 5) that Plaintiff stole her identity, and 6) by pressuring other officers to make and complete this false report which saying, for instance, "this guy sounds kinda shady", etc.

33. The information that Plaintiff obtained includes the following information regarding the officers involved: Sergeant Stevens #32499; Cody; Andrews; Kerry Young #33208; B. Royer #42959 (all from the Butler Ave. Station), and C. Halchishak #40285 and Salazar #33687 (both from the Culver Blvd. Station).

34. By intentionally layering Plaintiff's trauma of loss with an altogether new one of their conspiracy to hurt him precisely when he was vulnerable and disappear vital notarized legal documents, defendants by design irreparably harmed several court cases, from probate to interpleader actions to defamation lawsuits such that the nature of this conspiracy urgently needs to be discovered.

- 6 -
PLAINTIFFS' FIRST AMENDED COMPLAINT

EXHIBIT 3 - PAGE 21

35. Plaintiff's well-respected identity as a scholar and trustworthy business associate was also destroyed, and this includes the loss of real estate commissions worth wel above hundreds of thousands of dollars.

36. Because the police never informed Plaintiff that the needless autopsy proved his innocence already on 30 March 2018, he had to live with the idea that he was being investigated for homicide and forgery for a half-year and this decimated his relationship with his family, friends, anyone new he might meet and his otherwise good public name.

## FIRST CAUSE OF ACTION

## AGAINST DEFENDANTS AND DOES 1-50

### (False Imprisonment & Conspiracy)

37. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 36, above, as though fully set forth herein.

38. Plaintiff is informed and believes that on 28 March 2018 Defendants had Plaintiff falsely arrested for forgery and homicide of his significant other/domestic partner without probable cause.

39. Plaintiff had to post bail to be let out of jail and received literally no information about why any of this was happening to him.

40. The aforesaid false imprisonment has irreparably harmed Plaintiff's life and reputation; injured Plaintiff in their personal and professional relationships, occupation, their future business and employment prospects have been severely harmed, Plaintiff has had to incur substantial expense, in order to redress the harm they have suffered, all to Plaintiff's general and actual and specific damages, including compensatory, speculative, exemplary, treble and punitive damages, as

well as tortious interference with prospective relations, in an amount which far exceeds the jurisdictional minimum of this Court, and which will be proven at trial.

41. Further, defendants entered into an understanding and conspired with one another to tortiously harm Plaintiff via their false imprisonment.

42. In furtherance of the conspiracy Defendants fraudulently concealed from Plaintiff material facts regarding their actions that were introduced to deceive Plaintiff.

43. Defendants should be held jointly and severally liable for the above caused of action on the basis of conspiracy because: All Defendants were members of a combination of two or more persons.

44. The object of the combination of Defendants was to accomplish the unlawful purpose, that is, to falsely arrest, disappear vital legal documents and contracts and harm Plaintiff. Defendants had a meeting of the minds on the object course of action to "disappear" i.e. effectively murder Plaintiff.

45. At least one Defendant (in fact, all of them) committed an unlawful, overt act to further the object or course of action.

46. As a direct and proximate result of Defendants tortious acts committed in furtherance of the above-referenced conspiracy, Plaintiff has suffered substantial damages and is entitled to the relief sought herein.

## SECOND CAUSE OF ACTION

## AGAINST DEFENDANTS AND DOES 1-50

### (Intentional Infliction of Emotional Distress)

47. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 47, above, as though fully set forth herein.

48. Defendants intended to and inflicted emotional distress onto Plaintiff, specifically they made his life a living hell during and since this false arrest.

49. Because this intentional infliction of emotional distress was clearly aimed at Plaintiff its protracted and incalculable harm is reasonably tied to Plaintiff.

50. Defendants inscribed emotional pain onto Plaintiff with malice and with the intent to injure Plaintiff's life and to interfere with their personal relationships and employment opportunities in that Defendants harbored ill-will toward Plaintiff.

51. The aforesaid intentional infliction of emotional distress has harmed Plaintiff's life; such suffering has a tendency to injure and has injured Plaintiff in their personal and professional relationships, occupation, their future business and employment prospects have been severely harmed, Plaintiff has had to incur substantial expense, in order to redress the harm they have suffered, all to Plaintiff's general and actual and specific damages, including compensatory, speculative, exemplary, treble and punitive damages, as well as tortious interference with prospective relations in an amount which far exceeds the jurisdictional minimum of this Court, and which will be proven at trial.

### THIRD CAUSE OF ACTION

### AGAINST DEFENDANTS AND DOES 1-50

#### (Defamation)

52. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 51, above, as though fully set forth herein.

53. Defendants said and wrote and published defamatory statements about plaintiff.

54. Because this evidence makes it clear that defendants' intention was saying and writing these defamatory things about plaintiff, witnesses and Plaintiff both reasonably understood that these slanderous and libelous statements referred to plaintiff.

55. The aforesaid verbal statements made allegedly by defendants were and are false and were not privileged. Defendants made said statements knowing the falsity thereof or without using reasonable care to determine the truth or falsity thereof.

56. Defendants made the aforesaid statements with malice and with the intent to injure plaintiff's good name and reputation and to interfere with their personal relationships and employment opportunities in that defendants harbored ill-will toward plaintiff.

57. The aforesaid statements have harmed plaintiff's reputation; such statements have a tendency to injure and have injured plaintiff in their personal and professional relationships, occupation, their future business and employment prospects have been severely harmed, plaintiff has had to incur substantial expense, in order to redress the harm they have suffered, all to plaintiff's general and actual and specific damages, including compensatory, speculative, exemplary, treble and punitive damages, as well as tortious interference with prospective relations, in an amount which far exceeds the jurisdictional minimum of this Court, and which will be proven at trial.

## FOURTH CAUSE OF ACTION

## AGAINST DEFENDANTS AND DOES 1-50

### (Deprivation of Constitutional Rights Under Color of State Law 42 U.S.C. § 1983 & CC § 52, et seq)

58. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 57, above, as though fully set forth herein.

59. This is a civil rights action brought under 42 U.S.C. § 1983 and raising supplemental state-law claims of false imprisonment concerning the actions of defendants who unlawfully detained and used unlawfully excessive and unreasonable force against plaintiff. The actions and conduct of defendants are the result of a policy, practice, custom and deliberate indifference on the part of defendant Los Angeles Police Department.

60. The actions of defendants violated plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from the unlawful use of force and detainment, including taking his personal property, pursuant to 42 U.S.C. § 1983. Plaintiff seeks damages for violation of his constitutional rights under color of state law.

61. Defendants actions constitute the torts of assault, seizure of his personal property and false imprisonment under the laws of the state of California, and a violation of plaintiff's rights as secured by § 51.2 of the California Civil Code. This is based upon actions taken by defendants to brutally hand-cuff plaintiff, detain him in a window-solitary room for several hours while he had to use the bathroom and without reading him his rights, nor acknowledging his requests, and for taking his personal property including vital legal notarized documents. Plaintiff seeks any and all damages subject to proof and penalties pursuant to § 52.1.

## PRAYER FOR RELIEF

PLAINTIFF prays for relief as follows:

1) For economic damages, to be proven at trial;

2) For general and compensatory damages, to be proven at trial;

3) For exemplary and punitive damages to be proven at trial;

4) For costs of suit herein incurred;

5) For interest on all sums awarded at the maximum allowable rate;

- 11 -
PLAINTIFFS' FIRST AMENDED COMPLAINT

**EXHIBIT 3 - PAGE 26**

6) For attorney fees allowable by statute;

7) For such other and further relief as the Court may deem just and proper.

Dated 18 February, 19'

DR. STEWART LUCAS MURREY
PLAINTIFF IN PRO PER